# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**DEMARKUS MONTREAL TAYLOR,**      )
                                   )
        **Petitioner,**            )
                                   )
**v.**                             )    **No. 3:20-cv-00936**
                                   )
**BRIAN ELLER, Warden,**           )
                                   )
        **Respondent.**            )

## <u>MEMORANDUM OPINION</u>

DeMarkus Montreal Taylor ("Petitioner") is a state prisoner incarcerated in Northeast Correctional Complex located in Mountain City, Tennessee. (<u>See</u> Doc. No. 1). He is currently serving "an effective life sentence" for his 2015 convictions for felony murder, aggravated child abuse, and false reporting, (<u>see</u> Doc. No. 23-2 at 67–72), and he now challenges his convictions under 28 U.S.C. § 2254, (Doc. Nos. 1, 18). <u>State v. Taylor</u>, No. M2016-00255-CCA-R3-CD, 2017 WL 781733 at *8 (Tenn. Crim. App. Feb. 28, 2017). Before the Court is the Magistrate Judge's Report and Recommendation ("R&R"), recommending that the Court deny Petitioner's Amended Petition for a Writ of Habeas Corpus (Doc. No. 18), Petitioner's Motion for an Evidentiary Hearing (Doc. No. 40), and the issuance of a Certificate of Appealability. (<u>See</u> Doc. Nos. 44, 45). Petitioner has filed an Objection to the R&R, (Doc. No. 49), and Respondent has filed a response, (Doc. No. 52). For the reasons discussed herein, Petitioner's objections, (Doc. No. 49), will be overruled, and the Court will approve and adopt the R&R, (Doc. No. 44).

## I.      BACKGROUND

The Tennessee Court of Criminal Appeals ("TCCA"), on direct appeal, provided a comprehensive discussion of the factual details of the crime and the trial evidence. See <u>Taylor</u>, 2017 WL 781733 at *1–8. The Magistrate Judge incorporated the TCCA's recitation of those facts

and the trial evidence in his R&R, (Doc. No. 44 at 2–13), and Petitioner offers no objection to this portion of the R&R, (see Doc. No. 49). The Court, therefore, will discuss the factual details and trial evidence only to the extent that they are necessary in resolving Petitioner's objections, and it will recount the background of this case as follows.

On August 6, 2013, a grand jury, empaneled in Montgomery County, Tennessee, indicted Petitioner, along with the victim A.T.'s mother Rawney J. Taylor, on several counts of aggravated child abuse, in violation of Tennessee Code Annotated § 39-15-402; two counts of felony murder, in violation of Tennessee Code Annotated § 39-13-202(a)(2); and two counts of false reporting, in violation of Tennessee Code Annotated § 39-16-502. (Doc. No. 23-1 at 5–8).[1] Both Petitioner and Ms. Taylor were reindicted in February of 2015, and Petitioner was charged with four counts of aggravated child abuse, two counts of felony murder, and one count of false reporting. (Id. at 10–14).

Trial commenced on July 28, 2015 in the Circuit Court of Montgomery County, and Petitioner and Ms. Taylor were tried together. (See Doc. Nos. 23-4, 23-5, 23-6, 23-7); see also Taylor, 2017 WL 781733 at *12 n.1. The jury convicted Petitioner of two counts of aggravated child abuse, two counts of felony murder, and one count of false reporting. (Doc. No. 23-7 at 47–48). At the sentencing hearing, the trial court considered the presentencing report, the applicable sentencing guidelines, the trial evidence, and the parties' positions. (See Doc. No. 23-9); (see also Doc. No. 23-12 at 7). It merged the two felony-murder convictions and sentenced Petitioner to life in prison and twenty years as a Range I offender on his convictions for aggravated child abuse. (Doc. No. 23-12 at 7–8); (see Doc. No. 23-9 at 10). The trial court ordered that the sentences be

---

[1] The Court will refer to the child victim and the child victim's siblings by their initials, as the Magistrate Judge did in his R&R.

served concurrently for an effective sentence of sixty years. (Doc. No. 23-12 at 8); (see Doc. No. 23-9 at 12).[2]

Petitioner raised four claims for relief on direct appeal. Taylor, 2017 WL 781733 at *8–11; (see Doc. No. 23-12 at 5 (appellate brief)). Petitioner argued that the trial court erred: (1) in sustaining a verdict that was against the weight of the evidence; (2) in admitting autopsy photographs of A.T.; (3) in denying his motion for mistrial after Ms. Taylor's attorney attempted to introduce testimony regarding prior drug sales between Petitioner and a state's witness; and (4) in allowing the state to introduce the autopsy report of A.T. (Doc. No. 23-12 at 5). The TCCA, however, rejected each claim and affirmed the trial court's judgments. Taylor, 2017 WL 781733 at *12. On May 18, 2017, the Tennessee Supreme Court ("TSC") denied Petitioner's application for permission to appeal. (Doc. No. 23-17 at 1).

On August 14, 2018, Petitioner filed a *pro se* petition for post-conviction relief under Tennessee Code Annotated § 40-30-102. (See Doc. No. 23-18 at 1). Petitioner raised the following claims for relief: forty-one claims of ineffective assistance of counsel, (id. at 15–27); four claims that the state withheld evidence, (id. at 28–29); three claims of unconstitutional grand-jury selection, (id. at 29–30); fourteen claims of prosecutorial misconduct, (id. at 30–33); one double-jeopardy claim, (id. at 33); and nine claims of trial error, (id. at 33–35). Taylor v. State, No. M2109-2020-CCA-R3-PC, 2020 WL 4332531, at *1 (Tenn. Crim. App. July 28, 2020). On March 1, 2019, the trial court appointed counsel Taylor Dahl to represent Petitioner. (Doc. No. 23-20).[3] On September 27, 2019, it held a hearing on the timeliness of Petitioner's petition for

---

[2] Petitioner received a three-year sentence for the false-reporting conviction, also to run concurrent to the felony-murder sentence. (Doc. No. 23-9 at 11).

[3] Prior to Mr. Dahl's appointment, the trial court appointed Greg Smith, (Doc. No. 23-18 at 40 (order dated September 28, 2018)), and then Zach L. Talbot to represent Petitioner, (id. at

3

post-conviction relief.  (Doc. No. 23-21).  The post-conviction court determined that Petitioner's petition for post-conviction relief was untimely and that he "presented no proof . . . as to why the statute should be tolled[.]"  (Doc. No. 23-18 at 94–96 (citation omitted)).  It therefore summarily dismissed his petition.  (Id. at 96).  The TCCA affirmed the trial court's judgment, Taylor, 2020 WL 4332531 at *3; (see Doc. No. 23-26), and the TSC denied Petitioner's application for permission to appeal,  (Doc. No. 23-29 at 1).

On October 29, 2020,  Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court.  (Doc. No. 1).  By order dated January 13, 2021, after conducting a preliminary review of his Petition, the Court, in the interests of justice, appointed the office of the Federal Public Defender for the Middle District of Tennessee to represent Petitioner.  (Doc. No. 5 at 2 (citing 18 U.S.C. § 3006A(a)(2)(B))).  At that time, the Court also referred this action to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (Id. (citing Rule 8 of the Rules Governing Section 2254 Cases; M.D. Tenn. L.R. 72.02)).  Pursuant to that order, counsel filed an amended petition on Petitioner's behalf and pleads twenty-one claims for relief. (Doc. No. 18 at 1–10).  Respondent filed an answer, (Doc. No. 28), and Petitioner filed a reply, (Doc. No. 35).

Thereafter, Respondent filed a notice of supplemental authority addressing the Supreme Court's decision in Shinn v. Ramirez, 596 U.S. 366 (2022) and its application to Petitioner's procedurally defaulted ineffective-assistance-of-trial-counsel claims.  (Doc. No. 36 at 1).  Petitioner filed a response to Respondent's notice of supplemental authority.  (Doc. No. 38).  On March 1, 2024, the Magistrate Judge entered a sixty-two page R&R, (Doc. No. 44), and an order

---

82 (order dated February 14, 2019)).  Both Mr. Smith and Mr. Talbot, however, withdrew as Petitioner's counsel.  (Id. at 83, 86).

4

denying Petitioner's motion for evidentiary hearing as to his procedurally defaulted ineffective-assistance-of-trial counsel claims, (Doc. No. 45).

## II.     STANDARD OF REVIEW

Title 28 of the United States Code § 636(b)(1) authorizes a magistrate judge to make proposed findings of fact and recommendations in response to a dispositive motion. § 636 (b)(1)(B). A party may object to the magistrate judge's proposed findings and recommendation, and a district court reviews *de novo* those portions of a magistrate judge's recommendations to which the party has "properly objected to." Fed. R. Civ. P. 72(b)(3); <u>see</u> 28 U.S.C. § 636(b)(1); <u>see also</u> <u>Mira v. Marshall</u>, 806 F.2d 636, 637 (6th Cir. 1986) (explaining that, under 28 U.S.C. § 636(b)(1), "a district court need not provide *de novo* review where the objections are [f]rivolous, conclusive or general." (internal quotation marks and citation omitted)). A *de novo* review requires a court "to give fresh consideration" to the issues before it. <u>United States v. Raddatz</u>, 447 U.S. 667, 675 (1980) (internal quotation marks omitted). In doing so, it "cannot simply 'concur' in the magistrate judge's findings," <u>McCombs v. Meijer, Inc.</u>, 395 F.3d 346, 360 (6th Cir. 2005); instead, it must reach "the ultimate determination of the matter" through its own judicial discretion, <u>Raddatz</u>, 447 U.S. at 675–66. After its review,  it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); <u>see</u> Fed. R. Civ. P. 72(b)(3).

"The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." <u>Mira</u>, 806 F.2d at 637 (internal quotation marks omitted). A general objection, in contrast to a specific objection, "has the same effect[ ] as would a failure to object." <u>Howard v. Sec'y of Health & Human Servs.</u>, 932 F.2d 505, 509 (6th Cir. 1991). In this vein, a litigant must identify each issue in the R&R to which the litigant objects with sufficient

5

clarity such that the court can identify it, or else that issue is deemed waived.  See Miller v. Currie,

50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court

to discern those issues that are dispositive and contentious."); see also Thomas v. Arn, 474 U.S.

140, 147 (1985) (stating that objections must go to "factual and legal" issues "at the heart of the

parties' dispute").

## III.   DISCUSSION

Petitioner raises eight objections to the Magistrate Judge's R&R.  (Doc. No. 49 at 1–14).

The Court will address each one in the order that Petitioner raises them in his Objection.

### A.   Objection 1 (Claim Sixteen)

Petitioner asserts that the Magistrate Judge erred in denying his insufficiency-of-the-

evidence claim.  (Doc. No. 49 at 1).  Petitioner raises this claim as ground sixteen in his amended

petition.  (Doc. No. 18 at 7).  According to Petitioner, "[i]n violation of the due process clause of

the Fourteenth Amendment, there was insufficient evidence to support the essential elements of"

his "convictions of felony murder, aggravated child abuse, aggravated child neglect, and false

report, especially where there was no direct evidence of Petitioner causing injuries that lead to

death or inflicting abuse."  (Id.).

The Magistrate Judge rejected this claim for the following reasons:

> [I]n viewing the evidence in the light most favorable to the State, the
> undersigned finds that the Tennessee state courts could conclude
> that the evidence was sufficient to support Petitioner's conviction.
> Based on the proof offered at trial, specifically the testimony of
> multiple emergency responders, the statements made by M.T.
> [Petitioner's daughter], the fact that Petitioner was solely parenting
> the victim the day she died, Petitioner's delay in calling emergency
> services upon discovering the victim dead, and Petitioner's lying to
> the police regarding this discovery of the victim, the Tennessee
> Court of Criminal appeals appropriately "conclude[d] that the
> evidence was sufficient to sustain the Defendant's conviction[s]."

6

(Doc. No. 44 at 33 (quoting Doc. No. 23-14 at 12 (TCCA's opinion))).

However, in his objection, Petitioner insists that "this circumstantial evidence is simply insufficient, for it requires inference upon inference to reach the required level of intent for conviction." (Doc. No. 49 at 3). Accordingly, Petitioner suggests the Magistrate Judge's conclusion was erroneous because the TCCA's decision was "objectively unreasonable." (Id.).

Petitioner raised his insufficient-evidence claim on direct appeal, (Doc. No. 23-12 at 5), and he therefore exhausted it, see 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]"); see also Tenn. S. Ct. R. 39 ("[A] claim presented to the Court of Criminal Appeals shall be considered exhausted even when such claim is not renewed in the Supreme Court on automatic review."). Petitioner, therefore, is only entitled to relief if he can meet the standards under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which are highly deferential to state-court rulings and "demand[] that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted)). As the Magistrate Judge recognized, (Doc. No. 44 at 19–20), Petitioner must show that the TCCA's adjudication of his claim was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or (2) "based on an unreasonable determination of the facts in light of the evidence present in the State court proceeding," id. § 2254(d)(2). The Supreme Court has explained that a petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Petitioner argued on direct appeal "that the evidence presented at trial was insufficient to convince any rational trier of fact that he is guilty of the offenses of First Degree Murder during the commission of a felony, two counts of Aggravated Child Abuse, and one count of False Report beyond a reasonable doubt." (Doc. No. 23-12 at 10). In support of this claim, Petitioner stated, as he does in his amended petition before this Court, (Doc. No. 18 at 7), that "there was no direct proof that" he "inflicted injuries on the decedent on the day in question." (Doc. No. 23-12 at 11). And while he acknowledged that circumstantial evidence alone may be sufficient to support a conviction under Tennessee law, the "predominantly circumstantial" evidence in his case did not "'establish such a certainty of guilt . . . as to convince the mind beyond a reasonable doubt that'" he was "'the one who committed the crime.'" (Id. (quoting State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987))).

The TCCA applied the following standards in considering Petitioner's claim:

> An appellate court's standard of review when the Defendant questions the sufficiency of the evidence on appeal is "whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id., State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392–93 (Tenn. Crim. App. 1999).

Taylor, 2017 WL 781733 at *8. The TCCA then identified the elements of first-degree felony murder, aggravated child abuse, and false reporting under Tennessee law and concluded that "there [wa]s sufficient proof to support [Petitioner]'s convictions." Id. at *9.

The United States Supreme Court in Jackson held that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254[,]" a petitioner is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324. This standard "must be applied with explicit reference to the elements of the criminal offense as defined by state law." Id. at 339 n.16. In addition, the Jackson Court explained, "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 319. In addition, this inquiry does not demand a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. at 318–19 (emphasis in original) (internal quotation marks and citation omitted). Rather, the inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original) (citation omitted). Circumstantial evidence can be sufficient to prove a defendant's guilt beyond a reasonable doubt. See United States v. Price, 258 F.3d 539, 544 (6th Cir. 2001) ("[C]ircumstantial evidence may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt." (citation omitted)); see also Jackson, 443 U.S. at 324–25 ("From the circumstantial evidence in the record, it is clear that the trial judge could reasonably have found

9

beyond a reasonable doubt that the petitioner did possess the necessary intent at or before the time of the killing.").

As the Magistrate Judge recognized, a petitioner who raises a <u>Jackson</u> claim "faces a high bar in federal habeas proceedings because" he is "subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012); (Doc. No. 44 at 32 (citing <u>id</u>.)). The first layer of deference goes to the factfinder. <u>Tucker v. Palmer</u>, 541 F.3d 652, 656 (6th Cir. 2008) (explaining that, "[f]irst, deference should be given to the trier-of-fact's verdict, as contemplated by <u>Jackson</u>"). The second layer of deference goes to the state court's "consideration of the trier-of-fact's verdict, as dictated by AEDPA." <u>Id</u>. (citation omitted).

This Court, in applying *de novo* review, cannot agree with Petitioner that the Magistrate Judge "erred in denying relief on this claim." (Doc. No. 49 at 3). Whether the evidence is sufficient to support Petitioner's convictions "must be gauged in the light of applicable" Tennessee law. <u>Jackson</u>, 443 U.S. at 324. As the TCCA explained, first-degree felony murder is defined, in relevant part, as "[a] killing of another[,] committed in the perpetration of or attempt to perpetrate . . . aggravated child abuse[.]" Tenn. Code Ann. § 39-13-202(a)(2); <u>Taylor</u>, 2017 WL 781733 at *9. The state does not need to prove a "culpable mental state" for a felony-murder conviction, "except the intent to commit the enumerated offenses or acts in subdivision (a)(2)–(5)." Tenn. Code. Ann. § 39-13-202(b); <u>see</u> <u>State v. Thacker</u>, 164 S.W.3d 208, 223 (Tenn. 2005) ("No culpable mental state is required for a felony murder conviction except the intent to commit the underlying felony." (citing <u>id</u>.)). "[A] jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing." <u>Thacker</u>, 164 S.W.3d at 223 (internal quotation marks and citation omitted).

A person commits the offense of aggravated child abuse, as defined in Tennessee Code Annotated § 39-15-401(a). Tenn. Code. Ann. § 39-15-402(a). Section 39-15-401(a) provides:

> Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age, in such a manner as to inflict injury commits a Class A misdemeanor; provided however, that, if the abused child is eight (8) years of age or less, the penalty is a Class D felony.

Id. Under Tennessee law "[t]he mental state required for the offense of child abuse" is "'knowingly, other than by accidental means.'" State v. Dorantes, 331 S.W.3d 370, 385 (Tenn. 2011) (quoting Tenn. Code Ann. § 39-15-401(a)). The TSC has explained that "knowingly" under this statute "modifies 'treats.'" State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000). "Accordingly, the statute requires that the act of treating a child in an abusive manner . . . be knowing conduct." Id. The next inquiry "under the plain language of th[is]statute is simply whether the child sustained an injury[.]" Id.

In addition, the TSC has classified aggravated child abuse as "a nature-of-conduct offense" as opposed to a "result-of-conduct offense." Dorantes, 331 S.W.3d at 386. The former "'seeks principally to proscribe the nature of the defendant's conduct, as opposed to the result that the defendant's conduct achieves.'" Id. (quoting State v. Mateyko, 53 S.W.3d 666, 673 (Tenn. 2001)). So, "[a]s a nature-of-conduct offense, the evidence must be sufficient for a rational jury to have concluded, beyond a reasonable doubt, that the defendant was aware of the nature of his conduct when he treated the victim in such a manner as to inflict injury, and that, in so doing, he acted other than by accidental means." Id. (citation omitted).

Lastly, as to Petitioner's false-reporting conviction, a person makes a false report under Tennessee Code Annotated § 39-16-502 when they "[i]nitiate a report or statement to a law

enforcement officer concerning an offense or incident within the officer's concern knowing that . . . the information relating to the offense reported is false." § 39-16-502 (a)(1)(C).

"After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of" aggravated child abuse, first-degree felony murder, and false reporting "beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis omitted). At trial, M.T., A.T.'s older sister, testified that she personally observed Petitioner and Ms. Taylor "hurting" A.T. in the bathroom "[b]y getting beatings." (Doc. No. 23-5 at 46:14–20). According to M.T., Petitioner would sometimes beat A.T. with his hands and, at other times, with a belt. (<u>Id</u>. at 50:12–15). On cross-examination, she agreed that Ms. Taylor was at work at the time of A.T.'s "ginormous [] whipping." (<u>Id</u>. at 56:15–17).

Adele Lewis, M.D., then-forensic pathologist at the Medical Examiner's Office in Davidson County, testified that A.T. had bleeding on the inside of her eyes, which is "indicative of child abuse or inflicted injury on a child." (<u>Id</u>. at 69:16–19). According to Dr. Lewis, A.T.'s head injuries were what she "would expect to see in someone who ha[d] been in a major car crash or who had fallen two or three stories out of a building." (<u>Id</u>. at 69:1–4). Dr. Lewis described one injury on A.T.'s buttocks as a handprint. (<u>Id</u>. at 75:14–19). A "complex or grouping of bruises" on the left side of A.T.'s chest, according to Dr. Lewis, "c[ould] represent either fingertip bruises where the child has been grabbed forcibly or . . . from the child being punched and represent knuckle bruises." (<u>Id</u>. at 90:6–15). Dr. Lewis opined that, in all, A.T.'s injuries were consistent "with non-accidental or inflicted trauma" and that her cause of death was from multiple blunt force injuries. (<u>Id</u>. at 108:12; <u>id</u>. at 109:18–19).

Petitioner testified that Ms. Taylor had been working on July 11, 2013—the day that A.T. complained of head pain. (Doc. No. 23-6 at 47:3–6; <u>id</u>. at 50:6–10). He testified that he stayed at

home with A.T., and his other children, on that day and that A.T. had been experiencing head pain before Ms. Taylor returned home from work. (Id. at 47:9–12; id. at 50:10; id. at 50:19–21). On cross-examination, he confirmed that he was the only adult staying at home with his children on July 11, 2013. (Id. at 60:14–19). He acknowledged that he said in an interview with law enforcement that it looked like "somebody had beat that baby [A.T.] like a man[.]" (Id. at 64:7–9). As the TCCA noted, Ms. Taylor testified that Petitioner commented that he had "hope[d] this [A.T.'s death] didn't happen when" he "threw her on the bed and she hit her head[.]" (Id. at 94:21–22); Taylor, 2017 WL 781733 at *9.

Petitioner conceded on direct examination that he was untruthful when he told police that he called 911 just minutes after realizing A.T. was deceased. (Doc. No. 23-6 at 57:13–17). According to Petitioner, he "tried to make it like [he] called right after [he] found her" because he "just wasn't thinking clearly." (Id. at 57:18–23). He admitted during cross-examination that he knew A.T. was dead when he found her and that he waited five hours before calling 911. (Id. at 58:24–25; id. at 59:1–3; Id. at 59:8–10).

In his objection, Petitioner insists that this "circumstantial evidence is simply insufficient" to support his convictions because "it requires inference upon inference to reach the level of intent." (Doc. No. 49 at 3). According to Petitioner, "[t]he lack of evidence that" he "had the necessary intent, and that he did indeed abuse the victim, shows that 'no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Id. (quoting Jackson, 443, U.S. at 319)). This Court, however, may not "re-assess[] . . . the effect of" this evidence on habeas review. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). In line with Jackson, it, instead, "gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

13

ultimate facts." Jackson, 443 U.S. at 319; see Coleman, 566 U.S. at 655 ("Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" (quoting Jackson, 443 U.S. at 319)); see also Cavazos v. Smith, 565 U.S. 1, 7 (2011) ("[Jackson] instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting Jackson, 443 U.S. at 326)). A rational jury, on the record evidence before it, could have drawn the reasonable inference that Petitioner "inten[ded] to commit the enumerated offense[]" of aggravated child abuse to support a conviction for first-degree felony murder. Tenn. Code Ann. § 39-13-202(b); see Thacker, 164 S.W.3d at 223 ("No culpable mental state is required for a felony murder conviction except the intent to commit the underlying felony." (citing id.)). It could have also drawn the reasonable inference that he "knowingly, other than by accidental means, treat[ed]" A.T. "in such as manner as to inflict injury," Tennessee Code Annotated § 39-15-401(a) (aggravated child abuse), and falsely reported "the offense or incident" relating to A.T.'s death to law enforcement, see Tennessee Code Annotated § 39-16-502 (a)(1)(C) (false reporting).

In addition, the TCCA's conclusion that "there [wa]s sufficient proof to support the Defendant's convictions" was not objectively unreasonable, as Petitioner claims. Taylor, 2017 WL 781733 at *9. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. The TCCA cited Jackson in its opinion, and in line with Jackson, it recognized that it "does not reweigh the

evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state." Taylor, 2017 WL 781733 at *8 (citations and internal quotation marks omitted); see Jackson, 443 U.S. at 319 ("This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). In concluding that the evidence was sufficient to sustain his convictions for first-degree felony murder, aggravated child abuse, and false reporting, it summarized the evidence from Petitioner's trial as follows:

> Multiple emergency responders testified regarding the state in which the victim was found. She had blood on her nose and lip, and there were bruises on her body. The medical examiner testified about the extensive injuries that led to the victim's death, and her expert opinion was that the victim suffered from battered child syndrome and her death was a homicide. The Defendant was alone with the victim on the day of her death. Further, his [other] daughter M.T. testified that she saw the Defendant "beat" the victim. The Defendant waited five hours after finding the victim before calling the police and then lied about when he found her. Ms. Taylor testified that the Defendant commented that he hoped "this didn't happen when [he] threw her on the bed and she hit her head[.]"

Id. at *9. On the record before it, the TCCA's conclusion that the evidence was sufficient to support Petitioner's convictions was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. This evidence simply "was not nearly sparse enough to sustain a due process challenged under Jackson," as Petitioner suggests. Coleman, 566 U.S. at 656–57; (see Doc. No. 18 at 3 (arguing that "[t]he lack of evidence that" he "had the necessary intent, and that he did indeed abuse the victim, shows that 'no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting Jackson, 443, U.S. at 319))).

15

To conclude, Petitioner fails to overcome the deference this Court owes to the jury and state court under <u>Jackson</u>. The TCCA's conclusion was neither "contrary to," nor "involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court[.]" 28 U.S.C. § 2254(d)(1). The Court, therefore, does not find that the Magistrate Judge "erred in denying relief on this claim[,]" (Doc. No. 49 at 3), and Petitioner's objection as to this claim will be overruled.

## B. Objection 2 (Claim Eight)

Petitioner asserts that the Magistrate Judge erred in denying his claim regarding the introduction of prejudicial photographs. (Doc. No. 49 at 3). Petitioner raises this claim as ground eight in his amended petition, and he frames it as an ineffective-assistance-of-trial-counsel claim. (Doc. No. 18 at 5). According to Petitioner, "[t]rial counsel was ineffective in failing to prepare and present objections to the introduction of inflammatory, prejudicial, and duplicative photographs" of A.T. (<u>Id</u>.). He asserts that witness testimony described A.T.'s hemorrhaging in her brain and eyes, and "it was inflammatory and prejudicial to also show the jury graphic photographs of this nature." (<u>Id</u>.).

The Magistrate Judge did not consider the merits of this claim because Petitioner only raised it for the first time in his amended petition. (Doc. No. 44. at 49). And because "state-court remedies are no longer available to" Petitioner, the Magistrate Judge concluded that Petitioner procedurally defaulted this claim. (<u>Id</u>.). In addition, the Magistrate Judge determined that Petitioner failed to show cause to excuse procedural default under <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012). (<u>Id</u>.) Specifically, although the Magistrate Judge acknowledged that Petitioner, in his amended petition, "mentioned" <u>Martinez</u>, he indicated that Petitioner made "no specific attempt to argue that <u>Martinez</u> excuse[d] the default here." (<u>Id</u>.).

16

However, Petitioner states in his objection that he *did* argue, albeit in his reply to Respondent's answer to his amended petition, that <u>Martinez</u> excused any default as to this claim. (Doc. No. 49 at 3 (citing Doc. No. 35 at 7–9)). Specifically, he argued that <u>Martinez</u> excused any default because "this claim was substantial and had 'some merit[.]'" (<u>Id</u>. (quoting <u>id</u>.)).

In response to Petitioner's objection, Respondent states that the Magistrate Judge "properly determined that this claim is procedurally defaulted." (Doc. No. 52 at 4). Respondent, however, by all appearances, does not dispute that the Magistrate Judge overlooked Petitioner's <u>Martinez</u> argument in his reply. (<u>See</u> <u>id</u>. (stating that "the magistrate judge did not address Petitioner's <u>Martinez</u> argument[,] although similar arguments were addressed" (citing Doc. No. 35 at 7–8)). Nonetheless, Respondent maintains that the record shows that "this defaulted <u>Strickland</u> claim is unsubstantial" to excuse procedural default. (<u>Id</u>.)

As an initial matter, the Court notes that Petitioner does not specifically object to the Magistrate Judge's conclusion that he failed to raise this claim in state court. (Doc. No. 44 at 49). He also does not dispute the Magistrate Judge's finding that he has procedurally defaulted this claim because "state-court remedies are no longer available." (Doc. No. 44 at 49); (<u>see</u> Doc. No. 49 at 3). Based on a *de novo* review of the record, the Court agrees with the Magistrate Judge's conclusion that Petitioner failed to raise this claim in state court on direct appeal or in his post-conviction proceedings. (Doc. No. 23-12 at 5; Doc. No. 23-18 at 5–37; Doc. No. 23-24); <u>see</u> 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]"); <u>see also</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). It also agrees with the Magistrate Judge's

conclusion that Petitioner has procedurally defaulted this claim because no further avenue exists for him to present it in state court. See Tenn. R. App. P. 4(a) (establishing thirty-day deadline for filing an appeal, which runs from the date of entry of conviction); see also Tenn. Code Ann. § 40-30-102(c) (prohibiting the filing of more than one petition for post-conviction relief attacking a single judgment).

Petitioner, however, did argue in his reply to Respondent's answer to the amended petition that he should be excused from procedurally defaulting this claim because it "is substantial, and has 'some merit.'" (Doc. No. 35 at 7–9). The Court, therefore, will consider these arguments and whether he can "surmount the procedural default hurdle." Williams v. Booker, 454 F. App'x 475, 479 (6th Cir. 2012).

When, as here, a petitioner fails to raise a claim before the state courts while state-court remedies are available, that claim is procedurally defaulted and may not be considered by the federal court on habeas review. Seymour v. Walker, 224 F.3d 542, 549–50 (6th Cir. 2000). A petitioner, however, may avoid this procedural default by showing that "there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." Id. at 550 (citing Wainwright v. Sykes, 433 U.S. 72, 87, 90–91 (1977)). In Martinez, the Supreme Court held that ineffective assistance of post-conviction counsel can provide "cause" for excusing procedural default of an ineffective-assistance-of-trial-counsel claim. 566 U.S. at 9; see Shinn, 596 U.S. at 371; see also Sutton v. Carpenter, 745 F.3d 787, 790 (6th Cir. 2014) (holding that the Martinez exception applies to cases arising under Tennessee law). The Supreme Court in Trevino v. Thaler, 569 U.S. 413, 423 (2013) clarified that a federal habeas court could find "cause," excusing a petitioner's procedural default, if: (1) the ineffective-assistance-of-trial-counsel claim is substantial; (2) the "cause" consisted of

18

there being "no counsel or only ineffective assistance of" post-conviction counsel; (3) the state collateral review proceeding was the initial review proceeding with respect to the ineffective-assistance-of-trial-counsel claim; and (4) "state law *requires* that an ineffective assistance of trial [claim] . . . be raised in an initial-review collateral proceeding." Id. (emphasis in original) (internal quotation marks and citation omitted).

The parties dispute whether Petitioner can satisfy prongs one and two, as identified in Trevino. Respondent, citing an unpublished opinion, states that Petitioner cannot meet prong two because "the default occurred while Petitioner was acting pro se and before appointment of post-conviction counsel." (Doc. No. 28 at 27 (citing Watson v. Ford, No. 12-1131, 2016 WL 6652762, at *2 (W.D. Tenn. Nov. 10, 2016))). In reply, Petitioner states that Respondent's argument is contrary to the clear language of Trevino and Martinez. (Doc. No. 35 at 6; id. at 5 (emphasizing that, under Trevino, "the cause consisted of there being no counsel" under prong two) (internal quotation marks and citation omitted)). In addition, Petitioner maintains that he satisfies prong two because "[c]ounsel was not appointed until the appellate stage of [] [his] state postconviction litigation," and therefore, he was proceeding *pro se*. (Id.). Accordingly, his "understanding about the deadline for filing his state postconviction petition was likewise because he was proceeding without the guidance of counsel." (Id.).

But even assuming, without deciding, that Petitioner satisfies prong two, he falls short under Trevino's first prong: whether the ineffective-assistance-of-trial-counsel claim is substantial. According to Petitioner, trial counsel deficiently performed in failing to "prepare and present objections to the introduction and inflammatory, prejudicial, and duplicative crime scene and autopsy photographs." (Doc. No 35 at 8). Petitioner points specifically to the graphic photographs of A.T.'s brain and eyes that the state introduced during Dr. Lewis' testimony. (Id.

19

(referring to exhibits 10, 13–20, 24–58)).  In addition, Petitioner claims that "there is a reasonable probability that" he would have received a more favorable result had trial counsel objected to these photographs because he was convicted "entirely on circumstantial evidence."  (Id.).  For these reasons, he argues that this claim "*is* substantial, and has 'some merit.'"  (Id. at 7 (emphasis added)).

To show ineffective assistance of counsel excusing procedural default, the claim, to be "substantial" under Martinez, must have "some merit" based on the controlling standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 701 (1984). Martinez, 566 U.S. at 14; see Henderson v. Carpenter, 21 F. Supp. 3d 927, 935 (W.D. Tenn. 2014). To establish that counsel was ineffective under Strickland, a defendant must satisfy a two-part test. 466 U.S. at 687.  First, the defendant must show that counsel's performance was deficient by "identify[ing] the acts or omissions . . . that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  Second, a defendant must show that counsel's "deficient performance prejudiced the defense."  Id. at 687.  To satisfy the prejudice component, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A court, however, need not determine whether counsel's performance was deficient before examining whether the defendant suffered prejudice.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

The proper measure of counsel's performance is whether counsel's alleged errors "fell below an objective standard of reasonableness" under prevailing professional norms.  Id. at 687–88.  The Strickland Court, however, stopped short of establishing a checklist for evaluating the

20

reasonableness of attorney performance, because "[t]here are countless ways to provide effective assistance of counsel in any given case." Id. at 689. A court, rather, must judge the reasonableness of counsel's challenged conduct on the facts and circumstances of the case and based on counsel's perspective at the time. Id. at 688, 690.

In the failure-to-object context, the Supreme Court has recognized that the Constitution "guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." Engle v. Isaac, 456 U.S. 107, 134 (1982). In this vein, "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's determinant[,]" and "[l]earned counsel therefore uses objections in a tactical matter." Lundgren v. Mitchell, 440 F.3d 754, 774 (6th Cir. 2006). Accordingly, "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state." Id.

But as the record stands, the Court is left to speculate as to whether Petitioner can establish that his trial attorney was ineffective under Strickland for failing to object because Petitioner did not develop the factual basis for this claim in state court. 466 U.S. at 689 (internal quotation marks and citation omitted); see Barnes v. Elo, 339 F.3d 496, 501 (6th Cir. 2003) ("A claim of ineffective assistance of counsel presents a mixed question of fact and law[.]"); see also Rogers v. Mays, 69 F.4th 381, 397 (6th Cir. 2023) ("But to prove this [ineffective-assistance-of-trial-counsel claim], he [the petitioner] must point to evidence in the state-court record, which he has not done."). This is problematic for Petitioner because, under Martinez, "[w]hen faced with the question whether there is cause for an apparent default," an ineffective-assistance-of-trial-counsel claim is insubstantial if "it is wholly without factual support." 566 U.S. at 15–16.

21

In addition, Shinn—which both parties brief in their notices of supplemental authority, (Doc. Nos. 36, 38)—"severely limited" the availability of evidentiary development in claims like Petitioner's on federal habeas review. Black v. Falkenrath, No. 2:21-4207-NKL, 2022 WL 18024804, at *4 (W.D. Mo. Dec. 30, 2022). In Shinn, two prisoners—David Martinez Ramirez ("Ramirez") and Barry Lee Jones ("Jones")—argued that, pursuant to Martinez, cause existed for excusing their procedurally defaulted ineffective-assistance-of-trial-counsel claim because their post-conviction attorneys were ineffective. 596 U.S. at 372–74. Both prisoners petitioned the district courts for habeas review under 28 U.S.C. § 2254. Id. In Ramirez's case, the district court considered new evidence, including declarations, that were not before the state courts and excused the procedural default. Id. at 373. The United States Court of Appeals for the Ninth Circuit, however, reversed the district court's judgment and remanded for further factfinding. Id. The state petitioned for rehearing en banc, arguing that the Ninth Circuit's remand for additional evidentiary development violated 28 U.S.C. § 2254(e)(2). Id.

In Jones' case, the district court held a seven-day evidentiary hearing to determine whether there was "cause and prejudice" to excuse his procedurally defaulted ineffective-assistance-of-trial-counsel claim. Id. at 374. Based on the new evidence presented at the evidentiary hearing, it found that Jones' trial counsel had provided ineffective assistance of counsel. Id. It therefore "decided to forgive Jones' procedural default." Id. The Ninth Circuit affirmed the district court's judgment. Id. In both cases, the state petitioned the Supreme Court for certiorari, arguing that 28 U.S.C. § 2254(e)(2) does not allow a federal court to order evidentiary development simply because post-conviction counsel "is alleged to have negligently failed to develop the state-court record." Id. at 375. The Shinn Court determined that Martinez's equitable rule does not allow a federal court to "dispense with § 2254(e)(2)'s narrow limits" when a prisoner's state

22

postconviction counsel negligently fails to develop the state-court record. <u>Id</u>. at 371. It therefore reversed the judgments of the Court of Appeals. <u>Id</u>. at 391.

Considering <u>Shinn</u>, Petitioner is only entitled to factual development in federal court if he can satisfy 28 U.S.C. § 2254(e)(2). 596 U.S. at 379 ("[I]f the state-court record for that defaulted claim is undeveloped, the prisoner must show that factual development in federal court is appropriate."). Section 2254(e)(2) provides that, if a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may hold an evidentiary hearing on the claim in only two scenarios. <u>Id</u>. The claim must rely on (1) a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by the United States Supreme Court; or (2) "a factual predicate that could not have been previously discovered through exercise of due diligence." <u>Id</u>. § 2254(e)(2)(A)(i), (ii). In addition, a petitioner must show that "further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." <u>Shinn</u>, 596 U.S. at 381 (quoting § 2254(e)(2)(B)).

Petitioner makes no attempt to argue that he can satisfy either of these exceptions under § 2254(e)(2)(A) or satisfy § 2254(e)(2)(B). (Doc. No. 18 (amended petition); Doc. No. 35 (reply); Doc. No. 38 (response to notice of supplemental authority)). Instead, he claims that § 2254(e)(2)'s limitation simply "does not apply" in his case because this claim falls outside § 2254(e)(2)'s opening clause. (Doc. No. 38 at 5). Petitioner, specifically, relying on the Supreme Court's opinion in <u>Williams v. Taylor</u>, 529 U.S. 420, 432 (2000), states that, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." (<u>Id</u>. at 3). And because Petitioner maintains that he "*was* diligent in seeking to exhaust his claims in

state court and he was not 'at fault,'" he insists that § 2254(e)(2) does not apply. <u>Id</u>. at 5 (emphasis added)).

Petitioner's reading of <u>Williams</u> is correct. The <u>Williams</u> Court did indeed interpret "the opening clause" of § 2254(e)(2). 529 U.S. at 431. It explained § 2254(e)(2)'s "conditional clause '[i]f the applicant has failed to develop the factual basis for a claim in State court proceedings,'" "directs attention to the prisoner's efforts in state court. We ask first whether the factual basis was indeed developed in state court[.]" <u>Id</u>. But the inquiry does not end there; it disagreed with the state's contention that the federal habeas court may not inquire into the *reasons* for the default when determining whether the opening clause of § 2254(e)(2) applies. <u>Id</u>. ("We do not agree with the Commonwealth's interpretation of the word 'failed.'"). Accordingly, it interpreted the word "fail" or "failure to develop the factual basis of a claim" under § 2254(e)(2)'s opening clause as meaning "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." <u>Id</u>. at 431–32.

Also, Petitioner, in his response to Respondent's notice of supplemental authority, correctly states that "<u>Shinn</u> reaffirmed these principles" in <u>Williams</u>. (Doc. No. 38 at 3). But his assertion that he "was diligent" and was not "at fault" in seeking to exhaust this claim in state court is conclusory, and considering the information available to him, the record tends to refute that he made reasonable attempts to pursue it in state court. (<u>Id</u>. at 5). "Diligence for purposes of the opening clause [under § 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." <u>Williams</u> 529 U.S. at 435. The Sixth Circuit has explained that "whether the petitioner has been diligent in developing his claim parallels the issue of whether he can show cause for his default." <u>Hutchinson v. Bell</u>, 303 F.3d 720, 747 (6th Cir. 2002) (citing <u>id</u>. at 444).

24

Here, Petitioner was on notice that his trial attorneys did not object to the autopsy photographs at the time he filed his petition for post-conviction relief in state court. But for reasons he fails to explain, he did not raise an ineffective-assistance-of-trial claim based on his trial attorney's failure to object to these photographs, notwithstanding that he raised forty-one other claims of ineffective assistance of counsel in his petition for post-conviction relief. (Doc. No. 23-18 at 15–27); cf. Williams, 529 U.S. at 439–40 (determining that the petitioner was not diligent in failing to develop his Brady claim in state court when state habeas counsel was "on notice" of Brady material); Atwood v. Schriro, 489 F. Supp. 2d 982, 1024 (D. Ariz. 2007) ("Petitioner does not address why such evidence was not presented and developed in state court during the extensive eleven-day suppression hearing."). Petitioner does suggest in his reply to Respondent's answer to the amended petition that he was not at fault for failing to present his claims because "his understanding about the deadline for filing his state postconviction petition," which the state courts determined was untimely filed, "was likewise because he was proceeding without the guidance of counsel." (Doc. No. 35 at 6). But Petitioner does not direct the Court to any legal authority that would lend support that a petitioner who untimely files a petition for post-conviction relief in state court is diligent, or otherwise not at fault "in failing to develop" the factual basis for his claims in state court. Holland v. Jackson, 542 U.S. 649, 652–53 (2004).

For these reasons, Petitioner simply has not shown that the opening clause of § 2254(e)(2) should not be triggered here. In other words, Petitioner failed to develop the factual basis of this claim in state court within the meaning of § 2254(e)(2), and he is not entitled to an evidentiary hearing unless he can meet the stringent standards under § 2254(e)(2)(A) *and* § 2254(e)(2)(B). Shinn, 596 U.S. at 381 (explaining that even "[i]f a prisoner can satisfy either of these exceptions [under § 2254(e)(2)(A)(i) or (ii)], he also must show that further factfinding would demonstrate,

'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." (quoting § 2254(e)(2)(B))).  But again, he makes no attempt to surmount these standards, arguing only that  "§ 2254(e)(2)'s limitation simply does not apply."  (Doc. No 38 at 3, 5).

In sum, the Court agrees with the Magistrate Judge's conclusion that Petitioner procedurally defaulted this claim and that it "cannot be excused."  (Doc. No. 44 at 50).  In addition, Petitioner's ineffective-assistance-of-trial counsel claim, based on his trial counsel's failure to object to the autopsy photographs, is not substantial because it is "wholly without factual support." Martinez, 566 U.S. at 16.  He also cannot factually develop this claim through an evidentiary hearing in this Court because (1) this claim was undeveloped in state court, and (2) he has not shown that factual development in this Court is appropriate.  Shinn, 596 U.S. at 379 ("[I]f the state-court record for that defaulted claim is undeveloped, the prisoner must show that factual development in federal court is appropriate.").  He therefore has not satisfied Martinez's substantiality requirement for this claim and cannot overcome his procedural default.  See Rogers, 69 F.4th at 397 ("Because the state-court record is undeveloped and Rogers has not satisfied § 2254(e)(2), he has not produced any facts we can consider.  Thus, he has not met Martinez's substantiality requirement for any  of those claims and cannot overcome his procedural default.").  His objection that the Magistrate Judge erred in denying this claim will therefore be overruled.

### C.  Objection 3 (Claim Twenty-One)

Petitioner asserts that the Magistrate Judge erred in denying his claim regarding "failure to call defense witnesses."  (Doc. No. 49 at 5).  Petitioner states that he raises this claim as ground twenty-one in his amended petition.  (Id.).  In ground twenty-one of his amended petition, Petitioner "incorporates in its entirety," "all claims raised in his initial uncounseled habeas

petition" to ensure that he did not "in any way unintentionally overlook[]" them.  (Doc. No. 18

(citing Doc. No. 1)).  In his initial Petition, Petitioner argues that his trial counsel failed to call

forty-seven defense witness, and he raises this argument as a subclaim to his ineffective-assistance-

of-trial-counsel claim.  (Doc. No. 1 at 25–27).  In support of this claim, Petitioner argues that trial

counsel had "no legitimate strategic nor tactical reasons for . . . failing to contact these individuals."

(Id. at 27).  Petitioner also asserts that trial counsel's error prejudiced him.  According to Petitioner,

these witnesses would have "show[ed] the high rate of crime in the area [where Petitioner resided

with A.T]," and therefore, they would have effectively rebutted "the prosecution's statements to

the jury that the offenses occurred in a part of town free from criminal activity."  (Id. at 26–27).

The Magistrate Judge found that Petitioner procedurally defaulted this claim because the

post-conviction court dismissed it as untimely.  (Doc. No. 44 at 50).  In addition, the Magistrate

Judge determined that Petitioner could not "show actual prejudice or a fundamental miscarriage

of justice" to excuse procedural default under Martinez:

> Petitioner further claims that his trial counsel "had no legitimate
> strategic nor tactical reasons" for failing to contact these individuals
> [Doc. No. 1 at 27] . . . . This Court disagrees. Strickland instructs
> courts to "presume that trial strategy planned by counsel who spent
> far more time [than the reviewing Court] examining and planning
> for a case is sound." Doria v. Perry, No. 3:19-cv562, 2022 WL
> 2812663, 2022 U.S. Dist. LEXIS 126666, at *19 (M.D. Tenn. July
> 18, 2022) (citing Strickland, 466 U.S. at 689). Trial strategy
> involves crucial decisions on both what to include and what to
> exclude from a case. In Petitioner's case, trial counsel may have
> decided the most credible defense would be one which attacked the
> Prosecution[']s lack of proof. Further, the evidence that Petitioner
> resided in a high-crime area, if admitted, would only be relevant to
> suggest the decedent was the victim of a burglary. Such a theory
> would have opened the door for the Prosecution to attack the
> sufficiency and credibility of the Defense's case, which Petitioner's
> trial counsel could have reasonably foreseen as a greater liability
> than an asset to Petitioner's case.

(Id. at 51).

In response to Petitioner's objection, Respondent argues, and the Court agrees, that Petitioner's objection as to this claim should be overruled because it is "largely verbatim renewals of prior arguments." (Doc. No. 52 at 8 (citing Doc. Nos. 18, 49)). Petitioner, in his objection, fails to "pinpoint those portions of" the Magistrate Judge's reasoning that he claims are erroneous. Mira, 806 F.2d at 637. Petitioner, instead, merely reargues that trial counsel was ineffective. (See Doc. No. 49 at 6 (stating that "trial counsel was inefficient in failing to investigate these witnesses"); id. ("This is a substantial, constitutional claim that would have affected the outcome of trial, and the Report and Recommendation erred in concluding that it be denied.")).

Also, for the first time in his objection, he cites the Supreme Court's opinion in Wiggins v. Smith, 539 U.S. 510, 522–23 (2003) for the proposition that "[a] reviewing court does not focus on whether counsel should have necessarily presented certain evidence, rather the inquiry is 'whether the investigation supporting counsel's decision not to introduce [certain evidence] was itself reasonable.'" (Id.); cf. Murr v. United States, 200 F.3d 895, 907 n.1 (6th Cir. 2000) (stating that "while the Magistrate Judge Act . . . permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate judge"). But again, he fails to cite any portion of the Magistrate Judge's R&R that shows that he misapplied Wiggins or otherwise "erred in denying this claim." (Doc. No. 49 at 5). And this conclusory statement, without more, reads as a mere disagreement with the Magistrate Judge's conclusion and is not a proper objection. See Depweg v. Comm'r of Soc. Sec., No. 14-11705, 2015 WL 5014361, at *1 (E.D. Mich. Aug. 24 2015) ("Plaintiff's bare disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's

analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R&R." (citing Howard, 932 F.2d at 509)).

The Court, moreover, can discern no error in the Magistrate Judge's conclusion that Petitioner failed to establish a basis to excuse his procedural default. (Doc. No. 44 at 52 (determining that Petitioner "cannot show actual prejudice" or that he failed "to demonstrate a reasonable probability that the proceedings would have been different" absent trial counsel's error). As the Magistrate Judge explained in his R&R, to establish prejudice to excuse procedural default a "habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)); (Doc. No. 44 at 23–24). "[A]ctual prejudice to excuse a habeas petitioner's procedural default requires more than the prejudice prong under Strickland. Jones v. Bell, 801 F.3d 556, 563 (6th Cir. 2015); see Lee v. Haas, 197 F. Supp. 3d 960, 974 (E.D. Mich. 2016) ("Whereas the Strickland prejudice prong required Petitioner to show a reasonable probability the result of the appeal would have been different, actual prejudice requires a showing the outcome of the trial would have been different." (internal quotation marks and citation omitted)).

Here, Petitioner's assertion that the forty-seven defense witnesses would have "show[ed] the high rate of crime in the area [where Petitioner resided with A.T]," and therefore, they would have effectively rebutted "the prosecution's statements to the jury that the offenses occurred in a part of town free from criminal activity" is simply too speculative to establish prejudice under Strickland, let alone actual prejudice for excusing procedural default. (Doc. No. 1 at 26–27); (see Doc. No 49 at 5); see also Harrington, 562 U.S. at 792 (explaining that, under Strickland, "[t]he

29

likelihood of a different result must be substantial, not just conceivable").  And for the reasons already explained earlier, Petitioner has not shown that he was diligent in attempting to pursue his claims in state court or that that he is entitled to a hearing under 28 U.S.C. § 2254(e)(2).  His objection as to this claim will therefore be overruled.

### D.  Objection 4 (Claim Thirteen)

Petitioner asserts the Magistrate Judge erred in denying his claim regarding trial counsel's "failure to secure expert assistance."  (Doc. No. 49 at 6).  Petitioner raises this claim as ground thirteen in his amended petition.  (Doc. No. 18 at 6).  He specifically faults trial counsel for failing to enlist the help of an expert to (1) rebut Dr. Lewis' "speculative opinions" that A.T.'s cause of death was multiple blunt force trauma; and (2) explain "how lighting could be/was used to make bruising appear more prominent in photographs[.]"  (Id.).

The Magistrate Judge found that Petitioner procedurally defaulted this claim because the post-conviction court dismissed it as untimely.  (Doc. No. 44 at 52).  In addition, the Magistrate Judge determined that Petitioner failed to establish "prejudice" under Strickland because he offered no evidence that "an expert could have been obtained to testify favorably for him." (Id. (citing Dell v. Straub, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002))).  For the following reasons, he also found that Petitioner failed to show actual prejudice to excuse his procedural default:

> Even if Petitioner had found such an expert, and the expert had testified in Petitioner's favor, a reasonable jury could have still found the expert unconvincing in light of the State's expert witness. The effect a hypothetical Defense expert's testimony would have had on the outcome of his trial is further mitigated by the eyewitness testimony of Petitioner's surviving daughter, who witnessed A.T., Petitioner's daughter, "in the bathroom . . . getting beatings" from Petitioner before going "back in her room" and turning "all blue." Docket No. 23-5, pp. 46-47, 48. Petitioner has thus failed to establish a constitutional violation or plain error under state law sufficient to find actual prejudice to excuse procedural default of this claim.

(Id. at 53).

In his objection, Petitioner argues that "[c]ontrary to the Magistrate's conclusion," he "*did* show that counsel's ineffectiveness on this claim prejudiced him." (Doc. No. 49 at 6 (emphasis added)). In response, Respondent counters that the Court should overrule Petitioner's objection for two reasons: the objection is (1) "a reiteration of arguments in the amended petition and reply, (Doc. No. 52 at 8 (citing Doc. No. 18 at 6, Doc. No. 35 at 9–12)); and (2) "based on Petitioner's beliefs that he was convicted solely with circumstantial evidence, which he was not[,]" (id).[4]

The Court agrees with Respondent that Petitioner merely repeats the same arguments in his objection that he set forth in his reply to Respondent's answer. (Compare Doc. No 49 at 6–8 with Doc. No. 35 at 9–11). In addition, his singular statement that, "[c]ontrary to the Magistrate's conclusion," he "*did* show that [trial] counsel's ineffectiveness on this claim prejudiced him[,]" (Doc. No. 49 at 6 (emphasis added)), without "pinpointing th[e] portions of" the Magistrate Judge's reasoning that he claims are erroneous, reads as a mere disagreement with his conclusion, Mira, 806 F.2d at 637 (internal quotation marks omitted). See Thomas, 474 U.S. at 147 (stating that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). His objection is therefore improper, and the Court deems it waived. See VanDiver v. Martin, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) ("An 'objection' that . . . simply summarizes what has been presented before, is not an 'objection[.]'").

In the alternative, the Court cannot discern that the Magistrate Judge erred in concluding that Petitioner failed to show "actual prejudice" to excuse procedural default. (Doc. No. 44 at 53).

---

[4] Respondent further argues that Petitioner's assertion that he was convicted with only circumstantial evidence is misleading because his daughter, M.T., testified that she personally observed Petitioner "beating and thus causing" A.T.'s death. (Doc. No. 52 at 7). According to Respondent, M.T.'s statements are direct evidence. (Id.).

31

As the Magistrate Judge explained, to establish prejudice to excuse procedural default a "habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray, 477 U.S. at 494 (emphasis in original) (quoting Frady, 456 U.S. at 170); (Doc. No. 44 at 23–24). In his reply to Respondent's answer, Petitioner highlights, as he does in his objection (see Doc. No. 44 at 53), portions of the trial transcript to show that his trial counsel "struggled to rebut" Dr. Lewis' testimony that A.T.'s bruising "was not as bad or as noticeable" as she "testified to[,]" (Doc. No. 35 at 10). Specifically, the portions of the state-court record he cites show that Dr. Lewis' disagreed with trial counsel that "what appear[ed] to be a bruise [wa]s just a product of blood leaving the body or blood not flowing after death" or "pseudo bruising." (Id. at 10–11).

Petitioner, however, does not explain how his trial counsel's error "infect[ed] his entire trial with error of constitutional dimensions." Murray, 477 U.S. at 478 (internal quotation marks and citation omitted); (see Doc. No. 18 at 6); (see also Doc. No. 35 at 9–12). Instead, Petitioner focuses on showing cause for procedural default under Martinez on the basis that this claim is "substantial." (Doc. No. 35 at 12–13). But "federal habeas review of the claims is barred unless" Petitioner can "demonstrate cause for the default *and* actual prejudice as a result of the alleged violation of federal law, *or* demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991) (emphasis added); see Jones, 801 F.3d at 563 ("But that doesn't end this part of the analysis: Habeas petitioners must *additionally* show 'actual prejudice' to excuse their default—even if the error that served as the 'cause' is a structural one that would require a new trial." (emphasis in original) (citation omitted)).

Moreover, as the record stands, any contention on Petitioner's part that he was prejudiced by his trial attorney's error is speculative. See Dell, 194 F. Supp.2d at 659 ("Mere conclusory allegations in support of claims of ineffective assistance of counsel are insufficient, as a matter of law, to raise a constitutional issue." (citation omitted)). And for the reasons already explained earlier, Petitioner has not shown that he was diligent in attempting to pursue his claims in state court or that he is entitled to a hearing under 28 U.S.C. § 2254(e)(2).

In sum, the Court agrees with the Magistrate Judge's conclusion that Petitioner failed to show "actual prejudice to excuse procedural default." (Doc. No. 44 at 53). Petitioner's objection that the Magistrate Judge erred in denying this claim will therefore be overruled.

### E. Objection 5 (Claim Fourteen)

Petitioner asserts that the Magistrate Judge erred in denying his claim that trial counsel was ineffective for failing to object to the jury instructions, which "inaccurately defined the burden of proof." (Doc. No. 49 at 9). Petitioner raises this claim as ground fourteen in his amended petition. (Doc. No. 18 at 6). According to Petitioner, "[i]n violation of the Sixth and the Fourteenth Amendment's due process requirements, the trial court allowed the indictment to be amended for trial without presentation to the grand jury." (Id.). In support of this claim, Petitioner argues that "[t]hese variances [in the indictments] were material and prejudicial" and that trial counsel was ineffective for failing to file a motion to dismiss the indictment. (Id.). Additionally, he claims that "no transcript was prepared of the reading of the charges to the jury, further prejudicing" him "in the preparation of appellate and post-conviction motions." (Id. at 6–7).

The Magistrate Judge found that Petitioner procedurally defaulted this claim because the post-conviction court dismissed it as untimely. (Doc. No. 44 at 53). In addition, the Magistrate Judge determined that Petitioner did not establish "actual prejudice" to excuse his procedural

33

default under <u>Martinez</u> (<u>Id</u>. at 53–54). In his reasoning, the Magistrate Judge acknowledged that variances between indictments, if "material and prejudicial," can amount to a violation of Petitioner's rights to due process under the Fourteenth Amendment. (<u>Id</u>.); <u>see</u> <u>Cole v. Ark.</u>, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). The Magistrate Judge determined, however, that Petitioner offered only conclusory allegations as support for this argument that the variances in the indictments were material and prejudicial. (Doc. No. 44 at 54 (citing Doc. No. 18 at 6)). In a similar vein, he observed that "Petitioner cites to nothing in concluding the indictment varied in 'material and prejudicial' ways." (<u>Id</u>. (citing Doc. No. 18 at 6)). As to Petitioner's claim that trial counsel was ineffective for failing to move for dismissal, the Magistrate Judge concluded that, "even if Petitioner's counsel had moved for dismissal" and prevailed, Petitioner failed to "show any probability that the postconviction proceedings would have been different." (<u>Id</u>. 44 at 54). His claim that trial counsel was ineffective for failing to request a transcript of the reading of the charges or jury instructions, the Magistrate Judge concluded, was also conclusory. (<u>Id</u>. at 54–55 (stating that "there is similarly no evidence beyond conclusory allegations that trial counsel's failure [to request the transcript] made any impact on the success of Petitioner's appellate and/or post-conviction motions")).

In response to Petitioner's objection, Respondent argues that the Court should overrule it as improper because the objection is "[a] General Re-argument[]" that the Magistrate Judge considered and rejected. (Doc. No. 52 at 7). The Court agrees. In his objection, Petitioner merely regurgitates the same arguments he raised in his amended petition and that the Magistrate Judge

considered, and ultimately rejected, in his R&R.  (Compare Doc. No. 18 at 6–7 with Doc. No. 49 at 9); (see Doc. No. 44 at 53–55).  The Court, however, "need not provide *de novo* review where the objections are . . . conclusive or general."  Mira, 806 F.2d at 637 (internal quotation marks and citation omitted).  Petitioner's objection as to claim fourteen is therefore improper, and the Court treats it as waived.  Howard, 932 F.2d at 509 (stating that "[a] general objection . . . has the same effect[] as would a failure to object."); see VanDiver, 304 F. Supp. 2d at 937 ("An 'objection' that . . . simply summarizes what has been presented before, is not an 'objection[.]'").

In the alternative, the Court discerns no error in the Magistrate Judge's reasoning and conclusion that Petitioner did not establish "actual prejudice" to excuse his procedural default under Martinez (Doc. No. 44 at 55).  Again, Petitioner "must show not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Murray, 477 U.S. at 494 (emphasis in original) (internal quotation marks and citation omitted).  Petitioner makes no attempt to make this showing.  (See Doc. No. 18 at 6); see also Rule 2 of the Rules Governing Section 2254 Cases (providing that a petition for a writ of habeas corpus must "specify all the grounds for relief" and "state the facts supporting each ground"); cf. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("The [] presentation of conclusory allegations unsupported by specifics is subject to summary dismissal[.]").  Petitioner's objection as to this claim will therefore be overruled.

### F.  Objection 6 (Claim Fifteen)

Petitioner asserts that the Magistrate Judge erred in denying his claim that his trial attorney was ineffective for failing to object to the trial court's improper jury instructions.  (Doc. No. 49 at 9).  Petitioner raises this claim as ground fifteen in his amended petition.  (Doc. No. 18 at 6).

35

According to Petitioner, "[i]n violation of the Sixth and the Fourteenth Amendments, the trial court provided jury instructions that denied" him due process and trial counsel was ineffective for failing to object to these instructions. (Doc. No. 18 at 7). In support of this claim, Petitioner argues that "the trial court instructed the jury that:

> Reasonable doubt is that doubt engendered by an investigation of all the evidence in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. *Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required*, and this certainty is required as to every element of proof necessary to constitute the offense. The jury was also instructed to render its verdict 'as truth and justice dictate.

(Doc. No. 35 at 12 (emphasis in original) (internal quotation marks and citation omitted)) (see Doc. No. 18 at 7).

In reply to Respondent's answer to the amended petition, Petitioner argues that this claim is substantial under Martinez. (Doc. No. 35 at 13). Citing the Supreme Court's opinion in Holland v. United States, 348 U.S. 121, 140 (1954), Petitioner states that "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." (Id.). But Petitioner contends that "the trial court's instructions relating to reasonable doubt did not do so." (Id.). According to Petitioner, these jury instructions, "[t]aken in context as combined with the problematic language that told jurors to render their verdict 'as you think justice and truth dictate,'" relieved the government of its burden of proving guilt beyond a reasonable doubt. (Id.)

The Magistrate Judge found that Petitioner procedurally defaulted this claim because the post-conviction court dismissed it as untimely. (Doc. No. 44 at 56). In addition, he concluded that Petitioner failed to establish a constitutional violation "sufficient to find actual prejudice to excuse the procedural default" for the following reasons:

36

The Sixth Circuit has previously upheld the constitutionality of "moral certainty of guilt" and "inability to let the mind rest easily about guilt" instructions. Austin v. Bell, 126 F. 3d 843, 846 (6th Cir. 1997) (holding that these instructions, given together, do not lower the State's burden of proof). The "as you think justice and truth dictate" instruction has also been held constitutional when it relates "to the verdict representing the considered judgment of each juror." Morris v. Bell, No. 07-1084-JDB, 2011 U.S. Dist. LEXIS 155039, 2011 WL 7758570, at *36 (W.D. Tenn. Sept. 29, 2011) (holding that this instruction, when given in this context, "does not give the jury permission to devise its own standard of proof"), rev'd on other grounds, Morris v. Carpenter, 802 F.3d 825 (6th Cir. 2015). Here, the "as you think justice and truth dictate" instruction was given in context of the "considered judgment of each juror" instruction, and not in relation to the aforementioned "reasonable doubt" instruction. Thus, this instruction did not unconstitutionally lessen the prosecution's burden.

(Id. at 56).

In his objection, Petitioner mostly reiterates the same points he raised in his reply to Respondent's answer to the amended petition. (Compare Doc. No. 49 at 10 with Doc. No. 35 at 13). However, he does fault the Magistrate Judge, albeit in a single sentence, for "cit[ing] to several cases [] neither of which included both of the[] harmful phrases" at issue in his case. (Doc. No. 49 at 10).

In response, Respondent argues that the Court should overrule this objection because the Magistrate Judge concluded that this claim is unsubstantial. (Doc. No. 52 at 5). First, Respondent states that the Magistrate Judge cited Austin, 126 F.3d at 646 to show that "the Sixth Circuit has already held constitutional the 'moral certainty' and 'inability to let the mind rest easily about guilt' instruction." (Id. at 6). Respondent also states that the Magistrate Judge cited Morris, 2011 WL 7758570 at *36 to show that "the 'as you think truth and justice dictate' instruction was previously upheld." (Id.). Second, Respondent maintains that Petitioner merely speculates in his operative pleadings that trial counsel's failure to object "would have affected the outcome of the trial" (Id. (citation omitted)). But because "[s]peculation does not establish prejudice" under

37

Strickland, Respondent suggests that Petitioner did not establish that this claim was substantial. (Id. at 6–7).

The Due Process Clause of the Fourteenth Amendment requires the government to prove, beyond a reasonable doubt, every element of a charged offense. See In re Winship, 397 U.S. 358, 364 (1970). The Constitution, however, does not provide a blueprint for reasonable doubt jury instructions; rather, whatever instructions given must, "taken as a whole, . . . correctly convey the concept of reasonable doubt to the jury." Victor v. Neb., 511 U.S. 1, 5 (1994) (quoting Holland, 348 U.S. at 140)). The Supreme Court held in Estelle v. McGuire, 502 U.S. 62, 72 (1991) that, on habeas review, the question "is whether the ailing [jury] instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (internal quotations marks and citation omitted). The inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Id. (internal quotation marks and citation omitted). The Estelle Court further explained that "[i]t is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. (internal quotation marks and citation omitted).

In conducting a *de novo* review, the Court does not agree with Petitioner's contention that the Magistrate Judge "cited to several cases, [] none of which included both of th[e] harmful phrases" at issue in his case or that he otherwise erred in denying this claim. (Doc. No. 49 at 10). Contrary to Petitioner's contention, the Sixth Circuit's opinion in Austin and the intra-circuit opinion in Morris that the Magistrate Judge cited in the R&R involved similar language in the jury instructions that Petitioner herein challenges. In Austin, for example, the Sixth Circuit considered whether the moral-certainty language in the jury instructions—language that Petitioner emphasizes in his reply as "inaccurately defin[ing] the burden of proof," (Doc. No. 35 at 12)—was

38

constitutionally permissible. 126 F.3d at 847. The petitioner in <u>Austin</u> alleged that the following jury instructions were unconstitutional:

> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required and this certainty is required as to every proposition of proof requisite to constitute the offense.

<u>Id</u>. at 846. This language is almost exact to the language in Petitioner's jury instructions:

> Reasonable doubt is that doubt engendered by an investigation of all the evidence in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every element required to constitute the offense.

(Doc. No. 23-2 at 22). And in <u>Austin</u>, the Sixth Circuit, in line with <u>Estelle</u>, found that this instruction did "not create a reasonable likelihood that the jury applied the instruction in a way that would lower the state's burden of proof because it does not increase the measure of doubt beyond a 'reasonable doubt.'" 126 F.3d at 847; <u>see Estelle</u>, 502 U.S. at 72 ("[W]e inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." (internal quotation marks and citation omitted)).

In <u>Morris</u>, the petitioner, like Petitioner herein, argued that his trial attorneys were ineffective for failing to object to the moral-certainty and truth-and-justice-dictate language in the trial court's jury instructions—similar language that Petitioner challenges in claim fifteen of his amended petition. 2011 WL 7758570 at *36. The petitioner in <u>Morris</u> alleged:

> [T]he [trial] court provided reasonable doubt instructions that, *inter alia:* allowed for conviction if the jury could "let the mind rest easily" on the certainty of guilt; eliminated possible doubts from the

39

> jury's consideration; only required "moral certainty" of guilt;
> required a mere "satisfactory conclusion" and "moral certainty" that
> the defendant was guilty, and allowed the jury to convict merely "as
> you think truth and justice dictate". The result of these instructions
> was to relieve the prosecution of its burden of proving all essential
> elements of the offenses beyond a reasonable doubt.

Id. at *33; (see Doc. No. 18 at 7 (claiming that "[t]he instructions relieved the prosecution of

proving, and the jury from being required to find, Petitioner's guilt and all elements required for

conviction beyond a reasonable doubt")). The district court in Morris rejected this claim given the

Sixth Circuit's opinion in Austin that "approved the constitutionally of Tennessee's reasonable

doubt instruction." 2011 WL 7758570 at *35 (citing Austin, 126 F.3d at 847).

 As to the truth-and-justice-dictate instruction in Morris, it read as follows:

> The verdict must represent the considered judgment of each juror.
> In order to return a verdict, it is necessary that each juror agree
> thereto. Your verdict must be unanimous. You can have no prejudice
> or sympathy, or allow anything but the law and the evidence to have
> any influence upon your verdict. You must render your verdict with
> absolute fairness and impartiality as you think *truth and justice
> dictates*.

2011 WL 7758570 at *35 (emphasis added). The district court disagreed with the petitioner that

this instruction relieved the government of its burden of proving guilt beyond a reasonable doubt

because the truth-and-justice-dictate language "relate[d] to the verdict representing the considered

judgment of each juror" and did "not give the jury permission to devise its own standard of proof."

Id. at *36. The jury instructions in Petitioner's case, like those at issue in Morris, read as follows:

> You can have no prejudice or sympathy, or allow anything but the
> law and the evidence to have any influence upon your verdict. You
> must render your verdict with absolute fairness and impartiality as
> you think *justice and truth dictate*.

(Doc. No. 23-2 at 45 (emphasis added)).

40

Thus, in reviewing Austin and Morris, the Court disagrees with Petitioner's contention that the Magistrate Judge "cited to several cases, [] none of which included both of th[e] harmful phrases" at issue in his case. (Doc. No. 49 at 10). And although Petitioner now faults the Magistrate Judge for the cases he cited in his R&R, (id.), he did not otherwise cite any binding decision in his reply for this Court's consideration, (see Doc. No. 35 at 10). Instead, Petitioner, in his reply, cited out-of-circuit opinions in support of his position that "the government was relieved of its burden of proving guilt beyond a reasonable doubt." (Id. (citing United States v. Glover, 511 F.3d 340 (2d Cir. 2008); United States v. Hernandez,176 F.3d 719, 731 (3d Cir. 1999); United States v. Shamsideen, 511 F.3d 340 (2d Cir. 2008))).

In sum, the Court does not find that the Magistrate Judge erred in concluding that Petitioner failed to show "actual prejudice to excuse the procedural default." (Doc. No. 44 at 53); see Murray, 477 U.S. at 494 (stating that "[t]he habeas petitioner must show not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" (emphasis in original) (internal quotation marks and citation omitted)). Petitioner's objection as to claim fifteen will therefore be overruled.

### G. Objection 7 (Motion for Evidentiary Hearing)

Petitioner asserts that the Magistrate Judge erred in denying his request for an evidentiary hearing. (Doc. No. 49 at 11). Petitioner argues, in his motion for an evidentiary hearing, that he is entitled to a Martinez hearing to determine whether he could overcome procedural default because he "was diligent in seeking to exhaust his claims in state court" and "not 'at fault.'" (Doc. No. 40 at 1, 6). According to Petitioner, he was diligent in attempting to factually develop these claims in state court because he understood that the one-year statute-of-limitations period for filing

a petition for post-conviction relief under Tennessee's Post-Conviction Act did not run "until the 90 days he had to seek certiorari from the United States Supreme Court had elapsed." (Id. at 6); (see Doc. No. 35 at 6 ("Further, his understanding about the deadline for filing his state postconviction petition was likewise because he was proceeding without the guidance of counsel.")). According to Petitioner, "this 90-day period would have expired on or about August 18, 2017" and so his petition for post-conviction relief "very well may have been timely filed." (Doc. No. 40 at 6).

The Magistrate Judge disagreed with Petitioner's assertion that he was not "at fault" for failing to exhaust his ineffective-assistance-of-trial-counsel claims. (Doc. No. 45 at 3). He explained that "[t]he failure to file a timely petition is the definition of a lack of diligence and the fault can only be attributable to Petitioner under those circumstance." (Id. at 2). He also found that "[u]nlike the cases cited by Petitioner in his motion, the Petitioner was not diligent in his efforts to develop the claims in state court." (Id.). In addition, considering Shinn, the Magistrate Judge stated that "it would seem perverse [] that a Petitioner could fail to comply with the procedural requirements" only to thereafter "essentially reopen the proof by way of an evidentiary hearing under Martinez in federal court to reach the merits of his procedurally defaulted claims." (Id.); (see Doc. No. 44 at 29 (stating that "post-conviction counsel's failure to develop the record to support those underlying claims in state court is attributable to Petitioner" (citing Shinn, 596 U.S. at 382–83)).

In response to Petitioner's objection, Respondent argues that the Court should overrule this objection because it is "general" and "is the same argument" Petitioner advanced in his motion for an evidentiary hearing. (Doc. No. 52 at 9–10). The Court agrees with Respondent. Petitioner, again, fails to "pinpoint those portions of" the Magistrate Judge's reasoning that he claims are

42

erroneous.  Mira, 806 F.2d at 637.  Instead, he merely reargues that he is entitled to a Martinez hearing because he insists that he was not at fault for failing to develop his claims in state court. (See Doc. No. 49 at 11–12 (stating that "[t]he Sixth Circuit has repeatedly held that a petitioner is entitled to an evidentiary hearing where the petitioner is not at fault for failing to develop a claim in state court." (citations omitted)).  Accordingly, his objection reads merely as a disagreement with the Magistrate Judge's conclusion that he "was not diligent in his efforts to develop the claims in state court" and is therefore improper.  (Doc. No. 45 at 2); see Depweg, 2015 WL 5014361 at *1 ("Plaintiff's bare disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R&R." (citing Howard, 932 F.2d at 509)).

In the alternative, the Court discerns no error in the Magistrate Judge's conclusion.  In his motion for an evidentiary hearing, Petitioner contends, as he does in his objection, that "he was not at fault" in failing to exhaust his ineffective-assistance-of-trial-counsel claims because he "understood that his state appeal would not be deemed final until the 90 days he had to seek certiorari from the United States Supreme Court had elapsed."  (Doc. No. 40 at 6).  But as the Court already stated earlier, Petitioner cites no legal authority that would lend support that a petitioner who untimely files a petition for post-conviction relief in state court is diligent, or otherwise not at fault "in failing to develop" the factual basis for his claims.  Holland, 542 U.S. at 652–53.[5]

---

[5] Petitioner argued in his post-conviction proceedings in state court that the statute of limitations period for filing a petition for post-conviction relief runs "upon the time for any potential appeal expiring, including the time for filing a certiorari petition to the U.S. Supreme Court."  (Doc. No. 23-18 at 95).  The post-conviction court, however, disagreed, and the TCCA affirmed the post-conviction court's judgment.  (Id.); see Taylor, 2020 WL 4332531 at *1 ("The

43

Petitioner also argues in his motion for an evidentiary hearing that "[t]he Sixth Circuit has repeatedly held that a petitioner is entitled to an evidentiary hearing where the petitioner is not at fault for failing to develop a claim in state court[,]" and he cites two Sixth Circuit opinions in support of this assertion.  (Doc. No. 40 at 7 (citing Cunningham v. Shoop, 23 F.4th 636, 655 (6th Cir. 2022); Greer v. Mitchell, 264 F.3d 663, 681 (6th Cir. 2001))).  The Court, however, finds the facts in those two opinions distinguishable from the facts in Petitioner's case.  In Cunningham and Greer, the Sixth Circuit determined that the habeas petitioners were entitled to an evidentiary hearing because they diligently attempted to develop the facts underlying their claims in the state courts.  Cunningham, 23 F.4th at 649; Greer, 264 F.3d at 681.  However, the petitioner in Cunningham *timely* filed his petition for state postconviction relief in state court.  See Cunningham, 23 F.4th at 645 ("Cunningham timely petitioned for state postconviction relief[.]").  In Greer, the Sixth Circuit determined that the petitioner was diligent when he pursued his ineffective-assistance-of-counsel claim in his petition for post-conviction, albeit prematurely.  264 F.3d at 681.  Accordingly, these two cases do not support that a habeas petitioner who has untimely filed a petition for post-conviction relief in state court is diligent in attempting to pursue his claims.

---

State responds that the petition was not timely because under Tennessee law, the post-conviction statute of limitation begins to run when the Tennessee Supreme Court issues an opinion or denies review.  Further, the State contends that Petitioner is not entitled to due process tolling. We agree with the State.").  To the extent that Petitioner argues before this Court that his petition for post-conviction relief *was* timely, the Supreme Court has explained that, for purposes of § 2254(d)(2), "[w]hen a postconviction petition is untimely under state law, that is the end of the matter."  Allen v. Siebert, 552 U.S. 3, 4 (2007) (internal quotation marks and citation omitted).  In other words, it is not the province of a federal district court, under § 2254, to "delve into the intricacies of state procedural law in deciding whether a postconviction petition rejected by the state court as untimely was nonetheless 'properly filed.'"  Id. at 7.  This Court, therefore, must accept the state courts' determination that his petition for post-conviction relief was untimely under Tennessee Code Annotated § 40-30-102.  See Duffel v. Dutton, 785 F.2d 131, 133 (6th Cir. 1986) ("A federal court must accept a state court's interpretation of that state's statutes and rules of practice." (citations omitted)).

44

In sum, the Court does not agree with Petitioner that the Magistrate Judge erred in denying his motion for an evidentiary hearing. (Doc. No. 49 at 11). Petitioner's objection will therefore be overruled.

### H. Objection 8 (Remaining Claims)

Petitioner's final objection consists of a single sentence. (Doc. No. 49 at 11). He "maintains that the Magistrate erred in denying relief on his other various claims." (Id.). In response, Respondent counters that the Court should overrule this objection as "conclusory" and "general." (Doc. No. 52 at 8).

The Court agrees with Respondent. As already stated, the Court "need not provide *de novo* review where the objections are . . . conclusive or general." Mira, 806 F.2d at 637 (internal quotation marks and citation omitted). Petitioner's blanket objection that the Magistrate Judge "erred in denying relief on his other various claims" is improper because he fails "to pinpoint those portions of" his R&R that this Court must consider. Mira, 806 F.2d at 637. Petitioner's objection to the Magistrate Judge's R&R as to "his other various claims" will therefore be overruled.

## IV. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a Certificate of Appealability ("COA") should Petitioner file a notice of appeal. See Rule 11(a) of the Rules Governing Section 2254 Cases (explaining that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). Rule 22 of the Federal Rules of Appellate Procedure provides that an appeal of the denial of a habeas petition may not proceed unless a COA is issued under 28 U.S.C. § 2253. Fed. R. Civ. P. 22(b)(1). A court may issue a COA only if the applicant "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). A substantial showing is made when "reasonable jurists could debate whether . . . the petition should have been

45

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 475 (2000) (internal quotation marks and citations omitted).  A petitioner, specifically, "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id. at 484.  The Court finds that no reasonable jurist would differ on its disposition of any of the claims Petitioner raises in his amended petition.  Accordingly, a COA shall not issue.

## V.      CONCLUSION

For the foregoing reasons, Petitioner's Objection (Doc. No. 49) will be overruled.  The Court will approve and adopt the Magistrate Judge's R&R (Doc. No. 44) in its entirety, and Petitioner's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, (Doc. No. 18), and motion for evidentiary hearing, (Doc. No. 40), are denied.  (See Doc. No. 45 (denying Petitioner's motion for evidentiary hearing for "the incorporated reasons in the Court's Report and Recommendation")).  This action will be dismissed with prejudice.

An appropriate order will follow.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE